UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 1:18-CR-210 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| ANTHONY GILBERT-BROWN, and | : | (Electronically Filed) |
| VINCENT DESHIELDS, | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO SUPPRESS EVIDENCE**

DAVID J. FREED
United States Attorney

Dated:  June 12, 2019

Christian T. Haugsby
Assistant U.S. Attorney
christian.haugsby@usdoj.gov
PA205383

Daryl F. Bloom
Assistant U.S. Attorney
Daryl.Bloom@usdoj.gov
PA73820

228 Walnut Street, Suite 220
Harrisburg, Pennsylvania 17108
717/221-4482 (Office)
717/221-2246 (Fax)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................ii

I.    INTRODUCTION................................................................1

II.   BACKGROUND ............................................................. 2

III.  ARGUMENT ................................................................. 7

      A.   Officer Engle Had Reasonable Suspicion
           When He Attempted to Stop the Defendant .............................9

      B.   Officers Had Probable Cause to Arrest the
           Defendants and to Search Their Vehicle
           Incident to that Arrest ............................................. 12

      C.   The Contents of the Vehicle Inevitably Would
           Have Been Discovered Had Officer Not Conducted
           A Search at the Scene of Arrest................................. 15

IV.   CONCLUSION................................................................ 19

CERTIFICATION OF COMPLIANCE ......................................................

CERTIFICATE OF SERVICE.................................................................

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arizona v. Gant*,
  556 U.S. 332 (2009)........................................................................13, 14
*Chimel v. California*,
  395 U.S. 752 (1969).......................................................................13, 14
*Colorado v. Bertine*,
  479 U.S. 367 (1987)............................................................................16
*Florida v. Royer*,
  460 U.S. 491 (1983)............................................................................10
*Florida v. Wells*,
  495 U.S. 1 (1990) .........................................................................16, 17
*Illinois v. Lafayette*,
  462 U.S. 640 (1983)............................................................................16
*Illinois v. Wardlow*,
  528 U.S. 119 (2000)............................................................................10
*Katz v. United States*,
  389 U.S. 347 (1967)............................................................................12
*Leveto v. Lapina*,
  258 F.3d 156 (3d Cir. 2001) ...............................................................12
*Maryland v. Dyson*,
  527 U.S. 465 (1999)............................................................................14
*Michigan v. Long*,
  463 U.S. 1032 (1983)..........................................................................12
*Nix v. Williams*,
  467 U.S. 431 (1984)............................................................................15
*Pennsylvania v. Mimms*,
  434 U.S. 106 (1977)............................................................................11
*Ross*,
  456 U.S..............................................................................................14
*South Dakota v. Opperman*,
  428 U.S. 364 (1976)............................................................................16
*Terry v. Ohio*,
  392 U.S. 1 (1968) .........................................................................10, 12

*Thornton v. United States,*
   541 U.S. 615 (2004) ................................................................ 13
*United States v. Bonner,*
   363 F.3d 213 (3d Cir. 2004) ........................................... 10, 12
*United States v. Delfin-Colina,*
   464 F.3d 392 (3d Cir. 2006) ................................................ 10
*United States v. Donohue,*
   764 F.3d 293 (3d Cir. 2014) ........................................... 13, 14
*United States v. Givan,*
   320 F.3d 452 (3d Cir. 2003) ................................................ 10
*United States v. Johns,*
   469 U.S. 478 (1985) ............................................................. 14
*United States v. Johnson,*
   592 F.3d 442 (3d Cir. 2010) ................................................ 11
*United States v. Lewis,*
   672 F.3d 232 (3d Cir. 2012) ............................................. 9, 10
*United States v. Moorefield,*
   111 F.3d 10 (3d Cir. 1997) .................................................. 11
*United States v. Mundy,*
   621 F.3d 283 (3d Cir. 2010) ................................................ 16
*United States v. Robertson,*
   305 F.3d 164 (3d Cir. 2002) ............................................. 9, 12
*United States v. Robinson,*
   414 U.S. 218 (1973) ............................................................. 13
*United States v. Salmon,*
   944 F.2d 1106 (3d Cir. 1991) .............................................. 13
*United States v. Silveus,*
   542 F.3d 993 (3d Cir. 2008) ................................................ 10
*Weeks v. United States,*
   232 U.S. 383 (1914) ............................................................. 13

Statutes

75 Pa. Cons. Stat. Ann. § 3733(a) ............................................ 11
75 Pa. Cons. Stat. Ann. § 6308(a) ............................................ 11

I.    <u>INTRODUCTION</u>

Anthony Gilbert-Brown and Vincent Deshields (the "defendants") were arrested in York, Pennsylvania on the night of February 19, 2018 after they repeatedly disobeyed lawful police orders and used their vehicle as a weapon to assault a police officer and disable the officer's vehicle.  A search of the defendants at the time of their arrest revealed them to be in possession of a considerable quantity of cash, a bag of marijuana, Ziploc baggies, and a bag containing a white, chalky substance.  A handgun was openly visible in the car's cup holder, and a subsequent search of the vehicle incident to arrest, and again three days later pursuant to a warrant, uncovered additional gun and drug evidence.

The defendants have moved to suppress the evidence on the grounds that the arresting officer lacked reasonable suspicion to detain them and lacked probable cause to arrest them and search them and the vehicle incident to their arrest.  For the reasons that follow, the United States submits that the defendants' arguments in favor of suppression are without merit and the motion should be denied.

II.   <u>BACKGROUND</u>

The circumstances that led to the defendants' arrest arose out of an entirely unrelated police incident.  On the night of February 19, 2018, Bradley Engle, a York City Police Officer, was working patrol in the Parkway area of York, a part of the city that had experienced a recent spike in criminal activity.  N.T. 4-5.  A report came in regarding a stolen red Mazda 3.  *Id.*  Officer Engle subsequently spotted a vehicle matching that description traveling westbound on Jefferson Street, and he proceeded to follow the vehicle.  N.T. at 5.

The occupants of the Mazda abandoned the vehicle in the intersection of Jefferson and Smith Streets and fled the area.  While the Mazda rolled to a stop, Officer Engle pursued one of the individuals down Smith Street a short distance but lost sight of him.  With his emergency lights activated, Officer Engle backed up on Smith Street towards Jefferson.  N.T. 8-9.  At this time, a white Chevrolet Cruze turned onto Smith Street, impeding Officer Engle's travel.  *Id.* at 9.  Using his vehicle's lights and audible signals to direct the driver of the Cruze to back up, Officer Engle proceeded to park his Ford Explorer in the middle of the intersection in order to block all lanes of travel and

establish a crime scene relating to the Mazda.  *Id.*  With his emergency lights activated, Officer Engle exited his vehicle and began to inspect the intersection for evidence relating to the stolen Mazda.  N.T. 11.

By this time, the Chevy Cruze and another vehicle that had driven into the area where each pointed in the direction of the intersection Officer Engle was attempting to secure.  *Id.* Officer Engle, who was wearing his official police uniform, signaled for the drivers of those cars to turn around on Jefferson and clear the area.  *Id.*  The second vehicle complied with Officer Engle's commands, but the Chevy Cruze did not.  *Id.*  Instead, the Cruze continued to move slowly toward the intersection in an apparent attempt to squeeze between Officer Engle's police vehicle and the abandoned Mazda that crashed into a home.  *Id.*

Officer Engle gave multiple verbal commands to the driver to turn the Chevy around, but the driver ignored him.  N.T. 13.  As the Cruze got closer to the intersection, Officer Engle approached the vehicle, by this time yelling for the driver to stop.  *Id.*  Officer Engle got close enough to the white sedan to see that the driver appeared to have a

"thousand-yard stare," with eyes that looked to be bloodshot and glassy. N.T. 14, 18.

The driver continued onward into the intersection.  N.T. 19. Based on the driver's failure to follow Officer Engle's repeated commands to turn around, his possible intoxication, and the fact that he was traveling into a crime scene, Officer Engle made physical contact with driver's side of the Chevy Cruze and once again ordered the driver to stop and exit the vehicle.  N.T. 19-20.

The driver of the vehicle again ignored Officer Engle's commands. Instead, the driver proceeded to throw the car into reverse and execute a partial turn before putting the car in drive and driving directly towards Officer Engle, making contact with his left leg.  N.T. 20. Officer Engle attempted to steady himself against the Cruze, which by this time was pushing the officer forward.  *Id.*  Reasonably fearing for his safety, Officer Engle drew his service weapon and fired four or five rounds into the windshield of the Cruze.  *Id.* at 20-21.  With the situation having escalated considerably, the driver of the white sedan put the car in reverse and began driving at a high rate of speed, eventually slamming into the front end of Officer Engle's Explorer,

causing the SUV to move from its parked position and rendering it disabled.  N.T. 21, 28.  Officer Engle gave more verbal commands to stop the vehicle and come out, all of which were ignored.  *Id.*  Instead, the driver once again drove towards Officer Engle at a high rate of speed, but ultimately stopped just before coming into contact with him a second time.  *Id.*  Officer Engle arrested the defendants with the assistance of other responding officers.

The defendants were searched incident to their arrest, and police discovered them to be in possession of a considerable quantity of United States currency, plastic baggies, a bag of marijuana, and a bag with a white, chalky substance.  N.T. 137-38.  Police also saw a handgun sitting openly in the car's cup holder.  Given the circumstances leading to the defendants' arrest and the discovery of gun and drug evidence on the men and in the car, officers conducted a further search of the vehicle on the scene.  That search uncovered a second 9mm handgun, ammunition, a digital scale, two knotted bags with white, chalky substance, a knotted bag containing marijuana, a vacuum-sealed bag that had been ripped open, and a cell phone.  N.T. 135-36.

Pennsylvania State Police were summoned to the scene to take

over the investigation because it involved an officer shooting.  N.T. 139.

The vehicle was towed to a State Police impound lot in accordance with

official policy.  N.T. 128.  Jason Groff, the State Police Trooper leading

the investigation, testified that it is official State Police policy to

conduct an inventory search of any automobile prior to having it

impounded.  *Id.*  On February 21, 2018, three days after the defendants'

arrest, the State Police applied for and obtained a warrant to conduct a

further search of the vehicle, which yielded a bag of crack cocaine, a

bullet, a marijuana blunt, three cell phones, and a copy of a letter from

the Pennsylvania Department of Transportation notifying the driver of

the Cruze, Anthony Gilbert-Brown, that his driving privileges had been

suspended.  N.T. 138.

On June 27, 2018, a grand jury returned a six-count indictment

charging the defendants with drug trafficking and firearms offenses.

Doc. 1.  On September 21, 2018, the defendants filed a motion to

suppress the evidence seized from them and the vehicle.  Doc. 40.  On

March 12, 2019, the Court convened an evidentiary hearing on the

motion.  The Court ordered the United States to respond to the
defendants' motion on or before June 12, 2019.  Doc. 70.

III.   <u>ARGUMENT</u>

The defendants' argument in support of their motion to suppress
rests upon assumptions which are belied by the evidence and which fly
in the face of settled law regarding investigatory stops and warrantless
automobile searches.  Moreover, the defendants' argument ignores
settled law regarding the legality of warrantless inventory searches and
the doctrine of inevitable discovery.

First, the defendants assert that Officer Engle lacked reasonable
suspicion even to attempt to stop the defendants from driving through
the crime scene he was establishing.  Given Officer Engle's testimony
that Defendant Gilbert-Brown had refused repeated commands to turn
his vehicle around, and continued his efforts to drive through the
intersection, the government submits that this argument is meritless.

The defendants' second argument grows out of the first:  they
contend that because Officer Engle lacked reasonable suspicion even to
attempt to stop their vehicle, he somehow could not have developed
probable cause to seize and arrest them after this point.   This

argument would have the Court ignore Officer Engle's testimony and the corroborating accounts of disinterested third-party witnesses who observed Gilbert-Brown drive his vehicle directly at the officer, striking him and his police cruiser, resulting in Officer Engle firing his service weapon at the car in an effort to protect himself.  Officer Engle's testimony was credible and corroborated, and his version of the events that transpired supports a finding that he had probable cause to believe that the defendants had committed a crime by assaulting him. Furthermore, the discovery of drug evidence on the defendants, and the discovery of a handgun in plain view inside the vehicle, provided further probable cause to allow officers to conduct a warrantless search of the car incident to the arrest.

Finally, the defendants try to convince the Court that the Pennsylvania State Police would not have been justified in conducting an inventory search of the vehicle after impounding it.  As best the government can tell, this argument is also based on the defendants' assertion that Officer Engle's alleged lack of reasonable suspicion at the outset of the encounter renders *any* subsequent search of the car unlawful, regardless of its basis.  The defendants point to no legal

authority to support this argument.  The evidence was uncontradicted

that when the Pennsylvania State Police impounds an automobile,

troopers will conduct an inventory search of that vehicle pursuant to

official State Police policy.  The law is clear that when police officers

perform an inventory search of an impounded car in accordance with

policy, they may do so without a warrant.  Since the Pennsylvania State

Police do, in fact, have a policy authorizing inventory searches of

impounded vehicles, the articles that were recovered from defendants'

car following their arrest would inevitably have been discovered.

A.    <u>Officer Engle Had Reasonable Suspicion When He
Attempted to Stop the Defendants</u>.

The Fourth Amendment to the United States Constitution

protects the public from "unreasonable searches and seizures."  U.S.

Const. amend. IV; *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir.

2012).  In general, for a seizure to be reasonable under the Fourth

Amendment, it must be "effectuated with a warrant based upon

probable cause."  *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir.

2002).  However, a well-established exception to the Fourth

Amendment's warrant requirement allows an officer to "conduct a brief,

investigatory stop when the officer has a reasonable, articulable

suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

The requirement that there be reasonable suspicion for a *Terry* stop applies equally in the case of a traffic stop of a vehicle. *Lewis*, 672 F.3d at 237; *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006). When a court is tasked with determining whether an officer possessed reasonable suspicion to conduct a traffic stop, the court is to consider the totality of the circumstances. *Lewis*, 672 F.3d at 237 (citing *United States v. Silveus*, 542 F.3d 993, 1000 (3d Cir. 2008)).[1]

Once a valid traffic stop is initiated, "an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (citations omitted). However, if reasonable suspicion for the traffic stop is absent, any evidence seized

---

[1] To the extent the defendants are implying that Officer Engle lacked a lawful basis even to approach their vehicle as they drove into the intersection that is incorrect as a matter of law. "Police officers may approach individuals without reasonable suspicion or probable cause, and may question such individuals without implicating the Fourth Amendment." *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983)).

during the course of the traffic stop must be suppressed. *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010).

To effect a lawful traffic stop, an officer must have observed a violation of state traffic regulations. *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). Refusing to obey an officer's instructions to pull over constitutes a violation of Pennsylvania's traffic laws. *See, e.g.*, 75 Pa. Cons. Stat. Ann. § 3733(a) ("Any driver of a motor vehicle who willfully fails to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2)."); 75 Pa. Cons. Stat. Ann. § 6308(a) ("The operator of any vehicle or any pedestrian reasonably believed to have violated any provision of this title shall stop upon request or signal of any police officer . . . .").

Based upon Officer Engle's testimony, he was authorized to stop the defendants, who had disregarded multiple commands to turn their

vehicle around, appeared to be intoxicated, and who proceeded to drive

into a secure location that contained evidence of a suspected car theft.[2]

B.   Officers Had Probable Cause to Arrest the Defendants and
     to Search Their Vehicle Incident to that Arrest.

It is settled law that "searches conducted outside the judicial

process, without prior approval by judge or magistrate, are *per se*

unreasonable under the Fourth Amendment – subject only to a few

specifically established and well-delineated exceptions." *Katz v. United*

*States*, 389 U.S. 347, 357 (1967) (footnote omitted).  One such exception

---

[2] Although Officer Engle was not successful in his attempt to effect a *Terry* stop, we note that had he been he would also have been justified in removing the defendants from the vehicle, *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004), and conducting a limited weapons search at that time.  *Terry*, 392 U.S. at 27; *see also United States v. Robinson*, 305 F.3d 164, 170; *Leveto v. Lapina*, 258 F.3d 156, 164 (3d Cir. 2001).  The Court heard evidence that when officers looked into the defendants' vehicle, a handgun could plainly be observed in the cup holder of the car.  The facts giving rise to Officer Engle's reasonable suspicion to justify an initial stop of the car, coupled with Officer Engle's inevitable observation of the gun, would have justified a search of the interior of the car within the occupants' immediate control, including passenger compartments.  *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983) ("[S]earch of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (quoting *Terry*, 392 U.S. at 21)).

is the right of officers to conduct a search incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *Weeks v. United States,* 232 U.S. 383, 392 (1914)).  This exception derives from "interests in officer safety and evidence preservation that are typically implicated in arrest situations."  *Id.*; *see also United States v. Robinson*, 414 U.S. 218, 230-34 (1973); *Chimel v. California*, 395 U.S. 752, 763 (1969).

Another exception to the warrant requirement is the so-called automobile exception.  The automobile exception "permits vehicle searches without a warrant if there is 'probable cause to believe that the vehicle contains evidence of a crime.'"  *United States v. Donohue*, 764 F.3d 293, 299-300 (3d Cir. 2014) (quoting *United States v. Salmon*, 944 F.2d 1106, 1123 (3d Cir. 1991)).  Although limiting the scope of the automobile exception in some circumstances, the Supreme Court's decision in *Arizona v. Gant* nevertheless reaffirmed that officers may search an automobile incident to an arrest "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  556 U.S. 332, 343 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)).

Where officers have probable cause to believe that a vehicle contains evidence of a crime, they are empowered lawfully to "search [ ] every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825.  Furthermore, where there is probable cause to believe that a vehicle contains evidence of criminal activity, police may search any area of the vehicle in which evidence might be found, including for evidence relevant to offenses other than the offense of arrest.  *Id.* at 820-21; *see also Gant*, 556 U.S. at 346.

Finally, "probable cause does not dissipate after the automobile is immobilized because the exception does not contain an exigency component." *Donohue*, 764 F.3d at 300 (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)).  Consequently, the government may lawfully search an impounded vehicle days following an arrest even without a warrant.  *Donohue*, 764 F.3d at 300-01 (citing *United States v. Johns*, 469 U.S. 478, 487-88 (1985).

In this case, Officer Engle had probable cause to arrest the defendants after they disobeyed repeated instructions to stop, and after the driver assaulted him with the vehicle.  The defendants were lawfully searched incident to their arrest, and that search revealed

14

them to be in possession of drugs and a large sum of cash.  A firearm was sitting visibly in a cup holder inside the car.  Given that the car itself was the instrumentality of the assault, and given the discovery of drug and gun evidence during the course of the defendants' lawful arrest, the search of Defendant Gilbert-Brown's car immediately following his arrest was permissible under the Fourth Amendment.

C.   The Contents of the Vehicle Inevitably Would Have Been Discovered Had Officers Not Conducted a Search at the Scene of Arrest.

Even if the arresting officers lacked probable cause to conduct a search of the Chevy Cruze incident to the defendants' arrest, the government submits that the incriminating evidence discovered within the vehicle would have been discovered during the course of a lawful inventory search of the vehicle pursuant to official State Police policy.

Evidence will not be suppressed if a court finds that the evidence would inevitably have been discovered even if no constitutional or statutory violation had occurred.  *Nix v. Williams*, 467 U.S. 431, 447-48 (1984) ("[I]f the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis

to keep that evidence from the jury in order to ensure the fairness of the trial proceedings.").

The Supreme Court has recognized an exception to the Fourth Amendment's warrant requirement for inventory searches of seized automobiles. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976).

To be lawful, inventory searches must be conducted in accordance with standardized criteria or routine, and be consistent with the purpose of a non-investigative search. *Bertine*, 479 U.S. at 374 n.6. The criteria or routine must limit an officer's discretion in two ways: first, as to whether to search the vehicle; and second, regarding the scope of the inventory search. *United States v. Mundy*, 621 F.3d 283, 288 (3d Cir. 2010). These limitations are in place to make sure that officers who perform these caretaking functions do not turn the inventory process into a "purposeful and general means of discovering evidence of a crime." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

During the evidentiary hearing in this case, Trooper Groff testified that when the Pennsylvania State Police are notified of an

officer-involved shooting in York County, Pennsylvania, it is the standard procedure of the State Police to take jurisdiction of the entire investigation that gave rise to the shooting.  N.T. 139.  Trooper Groff testified further that the State Police would take custody of the defendants' vehicle as part of that investigation, which is what occurred here.  *Id.*  Trooper Groff testified that prior to the impoundment of a vehicle, it is standard procedure for the State Police to conduct an inventory search of the vehicle in accordance with policy.  N.T. 136-37.  Trooper Groff further testified that Trooper Howanitz processed the defendants' vehicle as part of the Forensic Services Unit's investigation prior to the vehicle being towed to the State Police's impound lot.  N.T. 136.

Attached to the government's brief is a true and correct copy of the Pennsylvania State Police written policy governing, among other things, inventory searches.  Ex. 1 (FR-1-4).[3]  The written policy corroborates Trooper Groff's testimony regarding the policies and procedures of the

---

[3] The policy is dated September 13, 2018, which post-dates the incident in this case.  The inventory policy in place at the time of the defendants' arrest was unchanged from the current, attached version.

State Police with respect to the use of inventory searches on impounded vehicles.

Subject to certain exceptions, the State Police inventories and processes all vehicles and property taken into its possession. *Id.* § 4.07B. That policy further provides that an inventory search is to be conducted on "every vehicle seized, confiscated, or otherwise taken into custody through official action of the Department," including vehicles that had been in the possession of an arrestee immediately prior to arrest. *Id.* § 4.07B(1)(c)(3). The officer conducting the inventory shall look in the passenger area, cargo area, glove compartment, console, and trunk, and shall open and searched closed compartments or containers if they may be searched without damaging them. *Id.* § 4.07B(1)(e).

As Trooper Groff attested to during the evidentiary hearing, and as the attached policy makes further clear, the Pennsylvania State Police maintains a formal, written policy governing the use and scope of inventory searches for vehicles that the State Police takes custody of following the arrest of the driver and other occupants. That policy carefully limits the discretion of officers in conducting inventory searches, and conforms to the rules prescribed in *Bertine* and *Wells*.

18

The government therefore submits that even if the defendants' arrest and the subsequent search of Defendant Gilbert-Brown's vehicle were deemed to be constitutionally infirm, the vehicle would nevertheless have lawfully been impounded and inventoried pursuant to official policy, and the evidence recovered from the car would inevitably have been discovered in the course of that inventory process.

## IV.   CONCLUSION

For all of the foregoing reasons, the United States respectfully submits that the defendants' motion to suppress should be denied.

Respectfully submitted,

DAVID J. FREED
UNITED STATES ATTORNEY

Dated:  June 12, 2019        By:   *Christian T. Haugsby*
                                   Christian T. Haugsby
                                   Assistant United States Attorney
                                   christian.haugsby@usdoj.gov
                                   PA205383

                                   Daryl F. Bloom
                                   Assistant United States Attorney
                                   daryl.bloom@usdoj.gov
                                   PA73820

                                   228 Walnut St., Ste. 220
                                   HARRISBURG, PA  17108
                                   717-221-4482 (o)
                                   717-221-4493 (f)

19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 1:18-CR-210 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| ANTHONY GILBERT-BROWN, and | : | (Electronically Filed) |
| VINCENT DESHIELDS, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.8(b)(2), I hereby certify, based upon the word-count feature of the word processing system used to prepare the Government's Response, that this brief complies with the word-count limit described in Local Rule 7.8(b)(2), in that the brief contains fewer than 5,000 words, to wit, 3,840 words.

Respectfully submitted,

DAVID J. FREED
United States Attorney

Dated: June 12, 2019

/s/ Daryl F. Bloom
Daryl F. Bloom
Assistant U.S. Attorney
Daryl.Bloom@usdoj.gov
PA73820
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108
717/221-4482 (Office)
717/221-4493 (Fax)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 1:18-CR-210 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| ANTHONY GILBERT-BROWN, and | : | (Electronically Filed) |
| VINCENT DESHIELDS, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on this Wednesday, June 12, 2019, he served a copy of the attached

## UNITED STATES' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO SUPPRESS EVIDENCE

by electronic means sent to the Defendant's attorney at the following addresses:

Addressees:
William Feterhoff
wfetterhoff@live.com

Paul Kovatch
attorneypkovatch@gmail.com & kovatchlaw@gmail.com


Dated:  June 12, 2019                    /s/ Daryl F. Bloom
                                         DARYL F. BLOOM
                                         Assistant United States Attorney